**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JODY F..,**[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 20 C 3574** |
| | ) | |
| **v.** | ) | **Magistrate Judge Jeffrey Cole** |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff applied for Supplemental Security Income under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§1381a, 1382c, over five years ago. (Administrative Record (R.) 163-168). He claimed that he has been disabled since January 1, 2014, due a lower back injury, neuropathy, and migraines. (R. 181). Over the next three and a half years, plaintiff's application was denied at every level of administrative review: initial, reconsideration, administrative law judge (ALJ), and appeals council. It is the ALJ's decision that is before the court for review. *See* 20 C.F.R. §§404.955; 404.981. Plaintiff filed suit under 42 U.S.C. § 405(g) on June 18, 2020. The parties consented to my jurisdiction pursuant to 28 U.S.C. § 636(c) on July 11, 2020. [Dkt. #]. Plaintiff asks the court to reverse and remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an Opinion. Therefore, the plaintiff shall be listed using only their first name and the first initial of their last name.

**I.**

**A.**

Plaintiff was born on March 29, 1971, making him 43 years old when he alleges he became unable to work. (R. 163). Even at his age, he does not have much experience with work; a few months in 2013-14, in 2009, and off and on a bit from 1997 to 2002. (R. 179). Plaintiff reported that he could only lift, stand, and bend for a short amount of time before he had to stop for a while. (R. 191). Pain bothered his sleep. (R. 192). He had no troubles taking care of himself. (R. 192). He cooked full, multi-course meals every day. (R. 193). He could iron, do laundry, and clean house, but, he said, it took him longer than it used to. (R. 193). To get around, he walked, rode in someone else's car, or took public transportation. (R. 194). He was able to do his shopping three to four times a week. (R. 194). He reported that he could not stay focused like he would like to. He often spent time with other people engaging in social activities. (R. 195).

As disability cases go, the medical record in this case is rather small, not even 250 pages. (R. 275-517). There is very little, if any, evidence in that record to suggest that plaintiff is unable to work. Indeed, plaintiff's brief cites just a handful of pages covering just four medical visits as supportive of his claim for benefits. [Dkt. #19, at 4]. Plaintiff's physical impairments – arthritic issues with his back and neck – don't appear to trouble him much. Range of motion, strength, and gait are all consistently normal. His psychological impairment is similarly mild and his counselor has noted no deficiencies in concentration, energy, attention or other work-related capacities.

On February 27, 2015, an MRI of plaintiff's lumbar spine revealed mild to moderate degenerative changes and a mild disc bulge at L5-S1. There was moderate left and mild right foraminal narrowing. There was a minimal disc bulge at L3-4 and a mild disc bulge at L4-5. (R.

279). On March 13, 2015, an MRI of the cervical spine revealed small disc protrusions, borderline to mild spondylosis, and narrowing of disc spaces. (R. 276). On November 4, 2015, plaintiff went in to see his doctor complaining of swollen glands. Physical exam was normal throughout, including range of motion in the neck, but there was some swelling there. (R. 312-13).

On January 22, 2016, plaintiff complained of ankle pain due to an incident at work, and migraines. Migraines had been ongoing for about a year and were gradually improving. (R. 317). There was some ankle swelling but the rest of the physical examination was normal, including range of motion, throughout. (R. 318). On February 18, 2016, an EKG was negative for ischemia. (R. 299). Another study performed on April 7, 2016, to investigate a heart murmur and complaints of palpitations was essentially normal. (R. 289-90). On December 16, 216, plaintiff sought treatment for headaches and radicular pain from his back down to his left foot. Strength was normal; sensation was decreased in the left leg; gait was normal. (R. 352).

Plaintiff had a consultative examination in connection with his application for benefits on January 21, 2017. Plaintiff indicated his main issue was low back pain, dating back to about 2009. (R. 373). He had no problems cooking, vacuuming, bathing, dressing or climbing up to 25 stairs. He said he could only walk three blocks at a time, stand for 40 minutes at a time, and sit for 30 minutes at a time. (R. 374). Gait, heel-toe walk, and squat and rise were normal. He could not hop on one leg. Grip strength was normal, range of motion was normal throughout. (R. 375). Mental status examination was normal: attention, orientation, affect, and behavior. (R. 375).

Plaintiff began seeing Donna Smith, a Licensed Clinical Professional Counselor, on February 27, 2017. (R. 406). At her initial evaluation, speech and behavior were appropriate, affect and mood were normal. Plaintiff claimed he focused too much and was sometimes forgetful. He claimed to

hear voices and related a history of seeing deceased family members which, he said, was comforting. (R. 406-07). The doctor noted schizoaffective symptoms; PHQ-9 test was 5, perhaps indicating mild depression. (R. 409).

On March 13, 2017, plaintiff reported doing fine and denied feeling of depression. Ms. Smith, however, told him his PHQ-9 had slightly increased. Mood and affect were normal; plaintiff reported his mood did fluctuate. He did not like socializing or being around people. He was irritable but concentration and energy were normal. (R. 414-15). On March 22nd, plaintiff reported he was doing fine. He reported hearing voices, but was not frightened. Mood and affect were normal. There were no issues with energy, concentration, irritability, etc. (R. 414-15, 419-20). On April 12th, plaintiff reported he was doing okay, but was saddened by the death of his uncle. He was not the type who attended funerals – preferred memories of his uncle living – and his family did not understand this. He exhibited no symptoms of depression; concentration, energy, etc. were all normal. (R. 427-28).

On May 30th, plaintiff went in to have his medications refilled. He was having some back pain but denied any depression. Range of motion was normal in his neck and back. His mood and affect were normal. (R. 436-37). On June 6th, plaintiff related that he had ran out of medication and had a "rough couple of days" trying to get them refilled. He had been doing okay otherwise, and denied feeling depressed. Ms. Smith noted minimal anxiety. Plaintiff was enjoying spending most of his time with his grandchildren. Affect was somewhat flat, but mood was normal. He did say he felt hopeless sometimes. Energy and concentration were unaffected. (R. 440-41). On July 11th, again, plaintiff reported no issues. He worried about his family. He continued to hear voices. His daily activities were not affected. Mood, affect, concentration, and energy were all normal. (R. 444-

4

45).

On January 9, 2018, Ms. Smith filled out a "Psychological/Psychiatric Impairment." She said she had last seen plaintiff in October 2017. She reported that plaintiff suffered from depressive type schizoaffective disorder. She said she first diagnosed this on February 2, 2017, but, curiously, added that she had been treating the condition for ten years. (R. 455). Symptoms were flat affect and hallucinations. (R. 456). Plaintiff had no other symptoms. (R. 456-58). He worried about his family and "watched over them." Ms. Smith thought he would not be able to ride public transportation because there were too many people. He tended to be suspicious. But, plaintiff had no problems with concentration or attending to tasks. (R. 459). His impairment was managed with medication and under control. (R. 460). Treatment was good and prognosis was stable. (R. 461). Nevertheless, Ms. Smith checked "no" when asked if she considered plaintiff able to work. She was unable to explain why she thought that, however, and left that part blank. (R. 460).

**B.**

After an administrative hearings at which plaintiff, represented by counsel, testified, along with two vocational experts and a medical expert, the ALJ determined the plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, headaches, and depressive-type schizoaffective disorder. (R. 18). The ALJ then found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ specifically considered the requirements for the Listings covering mental impairments. (R. 19). In understanding, remembering, or applying information, the ALJ found the plaintiff had a mild limitation. In interacting with others and concentrating, persisting, or maintaining pace, the

5

ALJ found the plaintiff had moderate limitations. In adapting or managing oneself, the ALJ found the plaintiff had a mild limitation. (R. 19).

After summarizing the medical record, the ALJ then determined that plaintiff could perform light work with the following limitations: he was limited to a work environment not involving frequent balancing, stooping, kneeling, crouching, crawling and climbing of ladders, scaffolds, ramps, and stairs. He could reach overhead no more than occasionally. He was limited to a work environment with a moderate noise level. And, he was limited to simple, routine, repetitive tasks, with only occasional, brief, and superficial contact with co-workers, supervisors, and the general public; he could not perform work involving tandem tasks. (R. 20). The ALJ summarized the medical record in great detail. (R. 21-26). He determined that the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 26). The ALJ explained that treatment notes consistently showed minimal or unremarkable findings. (R. 26-27).

As for medical opinions, the ALJ gave the opinions from the state agency reviewing physicians that plaintiff had no exertional limitations and only some environmental limitation great weight, as they were essentially consistent with the minimal and unremarkable findings in the medical record. (R. 26). The ALJ gave Ms. Smith's opinion moderate weight, noting that she found plaintiff's impairment managed with medication and resulting in no limitations in concentration or persistence. (R. 26).

Next, the ALJ, relying on the testimony of the vocational expert, found that plaintiff could

6

not perform her past relevant work but could perform other work that existed in significant numbers in the national economy. Examples of such work were: hand packager (DOT 559,678-074; 119,000 jobs); mail sorter (DOT 209.687-026; 72,000 jobs); or office helper (DOT 239.567-010; 92,000 jobs). (R. 28). Accordingly, the ALJ found plaintiff not disabled and not entitled to benefits under the Act. (R. 28).

## II.

If the ALJ's decision is supported by substantial evidence, the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). To determine whether substantial evidence exists, the court reviews the record as a whole, *Biestek v. Berryhill*, – U.S. –, –, 139 S. Ct. 1148, 1154 (2019), but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Beardsley*, 758 F.3d at 837. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits," the court must defer to the Commissioner's resolution of that conflict. *Binion v. Chater,* 108 F.3d 780, 782 (7th Cir.1997); *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017).

The substantial evidence standard is a low hurdle to negotiate. *Biestek* , 139 S. Ct. at 1154; *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021). If reasonable minds could differ, the court must defer to the ALJ's weighing of the evidence. *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020). But, in the Seventh Circuit, the ALJ also has an obligation to build what is called an "accurate and logical

bridge" between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor–Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir.2010). The court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). Even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build that logical bridge. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)(". . . we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."). Of course, this is a subjective standard: one reader's Mackinac Bridge is another's rickety rope and rotting wood nightmare. The subjectivity of the requirement makes it difficult for ALJs hoping to write acceptable decisions that stand up to judicial scrutiny when challenged. But, at the same time, the Seventh Circuit has also called this requirement "lax." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). "If a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough." *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985). Given the record, and the lack of medical evidence of disability plaintiff has submitted, the ALJ has done more than enough here.

## III.

### A.

While the plaintiff lodges quite a few arguments against the ALJ's decision, in the main, they are either tossed out and never developed or left unsupported. For example, plaintiff asserts that he "claimant cannot perform even sedentary work. He cannot stand or walk 6/8 hours." [Dkt. #19, at 6]. But Plaintiff does not direct the court to any supporting evidence in the record, [Dkt. #19, at 6] and "saying so doesn't make it so...." *United States v. 5443 Suffield Terrace, Skokie, Ill.,* 607 F.3d 504, 510 (7th Cir.2010). *Accord Madlock v. WEC Energy Group, Inc.*, 885 F.3d 465, 473 (7th Cir. 2018); *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 770 (7th Cir. 2020)("Notably absent from these allegations, however, is any proposed proof that state actors, not municipal actors, were engaged in this *de facto* discrimination."); *Donald J. Trump for President, Inc. v. Secy of Pennsylvania*, 830 F. Appx 377, 381 (3d Cir. 2020)("But calling an election unfair does not make it so. Charges require specific allegations and then proof. We have neither here."). Even the Solicitor General's unsupported assertions are not enough. *Digital Realty Trust, Inc. v. Somers*, _U.S._, 138 S.Ct. 767, 779 (2018); *Bowers v. Dart*, 1 F.4th 513, 520 (7th Cir. 2021)("With all of this evidence in mind, we share the district court's conclusion that a rational juror could doubt that Bowers was telling the truth by insisting he could not walk.").

Our review of the record and the ALJ's consideration of it show, doctors' and nurses' findings were that plaintiff had normal range of motion and normal gait. For another example, plaintiff asserts that "[h]e cannot concentrate for a full five-day workweek" or that he "cannot concentrate when he is actively hallucinating." [Dkt. #19, at 6]. Again, he cites no evidence. [Dkt. #19, at 6]. His primary mental health care provider's notes indicate, session after session, that there

were no issues with plaintiff's concentration. (R. 414-15, 419-20, 427-28, 440-41, 444-45). Indeed, after treating plaintiff for about a year, she specifically said he had *no* issues with concentration. (R. 459). That's the opposite of what plaintiff is arguing and probably is why plaintiff is unable to provide any support for that argument.

As has already been indicated, the record goes on like that, entry after entry: no problems here, no issues there, and certainly nothing that would suggest plaintiff cannot perform simple, light work. Unfortunately, plaintiff's brief goes on in the same fashion as well: unsupported assertions and no citations to medical evidence. "[C]ourts do not have to scour the record or make a party's argument for it." *Varlen Corp. v. Liberty Mut. Ins. Co.*, 924 F.3d 456, 460 (7th Cir. 2019). It remains an "advocate's job is to make it easy for the court to rule in his client's favor...." *Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 613 (7th Cir. 2006). It is the plaintiff's burden to prove she is disabled by providing medical evidence in support of her claims. *See Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. Feb. 23, 2021); *Sosh v. Saul*, 818 F. App'x 542, 546 (7th Cir. 2020); *Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008)("The claimant bears the burden of producing medical evidence that supports her claims of disability. That means that the claimant bears the risk of uncertainty,...."); *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004)("It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability."); 20 C.F.R. § 404.1512(c)("You must provide medical evidence showing that you have an impairment and how severe it is during the time you say that you were disabled."). ALJs have to rely on medical opinions "based on objective observations," not "subjective complaints." *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004); *Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019); *Elder v. Astrue*, 529 F.3d 408, 413, 416 (7th Cir. 2008). It is obvious from the plaintiff's brief that these controlling principles

have been unheeded.

Yet, oddly, plaintiff argues that the ALJ "ignored medical evidence of record and opinions of specialists in the field, and failed to articulate his reasons for doing so." [Dkt. #19, at 6]. This conclusion has little to do with what the ALJ actually did in his opinion and with the medical record. The ALJ, who did not have to mention every piece of evidence in the record, *Jeske v. Saul*, 955 F.3d 583, 593 (7th Cir. 2020), essentially did so anyway. (R. 21-26). While, an ALJ cannot ignore lines of evidence that run counter to his conclusion, *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016), the plaintiff's brief is silent as to which bits of the record he thinks the ALJ ignored. Again, it's up to the plaintiff's lawyer to sift through the record and point that evidence out to the court. It is not for the court to scour the record to find something arguably supportive of the conclusion advanced by the plaintiff. That is the plaintiff's task. *United States v. Sineneng-Smith*, —— U.S. ——, 140 S.Ct. 1575, 1579, 206 L.Ed.2d 866 (2020); *Castelino v. Rose-Hulman Inst. of Tech.*, 999 F.3d 1031, 1041–44 (7th Cir. 2021); *Bunn v. FDIC*, 908 F.3d 290, 297 (7th Cir. 2018); *United States v. Gustin,* 642 F.3d 573, 575 (7th Cir. 2011). That simply did not happen here.[2]

---

[2] Again, the manner the plaintiff has gone about fashioning his brief makes his arguments, at times, difficult to follow. "But if [plaintiff] is complaining that the ALJ summarized the medical evidence, that is unavailing because summaries are appropriate." *Gedatus v. Saul*, 994 F.3d 893, 901 (7th Cir. 2021)(citing *Schomas v. Colvin*, 732 F.3d 702, 703 (7th Cir. 2013) ("The evidence before the ALJ includes extensive documentation of [claimant's] post-injury medical treatment, which we summarize."). "And if [plaintiff] is complaining that the ALJ's summary was a partial summary of select evidence, that is equally unavailing because all summaries must be partial and selective." *Gedatus,* 994 F.3d at 901 ("no document can include every detail and remain a summary"). And, as already pointed out, the ALJ's "summary" here was thorough and comprehensive.

**B.**

The plaintiff faults the ALJ for relying on the opinions of the state agency reviewing doctors. But the ALJ accepted those opinions in large part as they were consistent with the record, and, so, it was entirely proper for the ALJ to rely on those opinions. *See Gedatus v. Saul*, 994 F.3d 893, 899, 905 (7th Cir. 2021)("The ALJ gave solid, substantiated reasons for giving more weight to the state-agency physicians' opinions than to Gedatus's claims about the limiting nature of her symptoms."); *Matthews v. Saul*, 833 F. App'x 432, 433 (7th Cir. 2020)(opinions of the agency doctors constitute substantial evidence to supports an ALJ's conclusion); *Murphy v. Astrue*, 454 F. App'x 514, 519 (7th Cir. 2012); *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008).

And – again, contrary to the plaintiff's brief – the ALJ didn't use those opinions "only." [Dkt. #19, at 6]. As the disconnect between the plaintiff's brief and the record continues, plaintiff argues that:

> the ALJ cherry picked medical evidence that supported the determination that he had already made. He did not articulate his reasons for ignoring findings of the treating doctor. An ALJ must evaluate all relevant evidence when determining disability.

[Dkt. #19, at 8]. The ALJ certainly did not cherry-pick anything. As already noted, he provided a thorough discussion of all the evidence in the record. That evidence overwhelmingly supports his decision.

The ALJ also considered the opinion of plaintiff's counselor. It should be noted that, throughout his brief, plaintiff operates under the misconception that plaintiff's counselor – Ms. Smith, who identifies herself as a LCPC – was plaintiff's "treating doctor." *See, e.g.,* [Dkt. #19, at 8]. She was not. As a LCPC, Ms. Smith was not even an acceptable medical source. For claims filed before March 27, 2017, only licensed physicians and other qualified specialists were

12

"acceptable medical sources" under 20 C.F.R. § 416.927(a). Mental health counselors, licensed clinical social workers, and nurse practitioners were "other sources" under 20 C.F.R. § 404.1513(d).

Be that as it may, Ms. Smith said plaintiff had no issues or problems with concentration or attending to tasks. (R. 459). The only symptoms she reported were flat affect and hallucinations, presumably in reference to plaintiff telling her he sometimes heard voices. (R. 456). As we know from the medical record, his affect was flat only on a couple of occasions. Ms. Smith thought plaintiff couldn't ride public transit because there were too many people, although plaintiff had reported that he traveled using public transportation and went shopping three to four times a week. Ms. Smith checked the box that she felt plaintiff couldn't work, but she had no explanation for why she thought that. That is a significant deficiency. As already indicated, her records don't suggest that plaintiff can't work and she said plaintiff's impairment was managed with medication and under control, and treatment was good and prognosis was stable. (R. 460-61). If she can't provide support for a bald statement that plaintiff cannot work, her opinion is all but worthless. *Pavlicek v. Saul*, 994 F.3d 777, 781 (7th Cir. 2021)(" An ALJ may decline to give a treating physician's opinion controlling weight when the opinion is inconsistent with the physician's treatment notes."); *Recha v. Saul*, 843 F. App'x 1, 5 (7th Cir. 2021)(". . . the ALJ was correct to afford little weight to this evidence because many of the statements included in the letter—including references to ]plaintiff's] 'illogical thinking' and 'difficulties maintaining concentration'—were contradicted by [the doctor's] own treatment notes which almost universally indicated that [plaintiff's] thinking was logical and coherent and reflected intact concentration."); *Schmidt v. Astrue*, 496 F.3d 833, 842–43 (7th Cir. 2007).

13

Plaintiff also complains that the ALJ said that Ms. Smith's opinion was based on plaintiff's subjective complaints [Dkt. #19, at 7], (R. 25), it clearly was. An ALJ may properly reject a doctor's opinion –and, certainly, a counselor's opinion – if it is based on a claimant's subjective complaints rather than objective findings. *Ghiselli v. Colvin*, 837 F.3d 771, 776 (7th Cir. 2016); *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008); *White v. Barnhart*, 415 F.3d 654, 659 (7th Cir. 2005). In the case of a psychiatrist or psychologist, however, patients' self-reports often form the basis for psychological assessments. *Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015). Still, even in such cases, the doctor can be too uncritical. *See, e.g., Winsted v. Berryhill*, 923 F.3d 472, 477 (7th Cir. 2019)(ALJ properly rejected opinion from psychologist as it "largely reflected [plaintiff's] subjective reporting."). That certainly seems to have been the case here. Ms. Smith essentially signed on to the plaintiff's claim he was unable to work desire to work despite her treatment records and her inability to explain her opinion.[3]

## C.

The plaintiff's brief then moves to an argument often made in these cases:

Plaintiff does not have an intellectual impairment. In most cases, the use of the phrase,simple routine task will not account for all mental limitations. *Craft*, 539 F.3d 668,678 (restricting to unskilled work did not account for memory limitations,

---

[3] Certainly, especially in the Seventh Circuit, *see, e.g., Carradine v. Barnhart*, 360 F.3d 751, 763-67 (7th Cir. 2004)(Coffey, J., dissenting), subjective complaints cannot be ignored. But, again, it remains incumbent upon a claimant for disability benefits to prove he is disabled with medical evidence. Psychological impairments might be disabling or they might not. *See, e.g., Truelove v. Berryhill*, 753 Fed.Appx. 393, 394 (7th Cir. 2018)("intermittent explosive personality disorder, schizoaffective disorder, cannabis abuse, mood disorder, and borderline intellectual functioning" not disabling); *Kelham v. Berryhill*, 751 Fed.Appx. 919, 921-22 (7th Cir. 2018)("bipolar disorder, anxiety, and borderline intellectual functioning" not disabling). A diagnosis is not the same as disability. *Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005); *Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998). But even in the Seventh Circuit where we must apply the "logical bridge" requirement, an opinion that a patient is disabled that is offered without explanation and against a series of normal findings is a bridge too far.

> or mood swings):(simple routine tasks does not account for limitations in concentration, persistence and pace).The ability to stick with a given task,or remember the instructions,is not the same as learning a task, no matter what the difficulty. Some mental limitations make completing and attending to a simple,routine task as difficult as performing a more skilled task . . . .
>
> *      *      *
>
> "In most cases, however, employing terms like 'simple,repetitive tasks,'on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of [CPP]."Id at 620. .This is because "[t]he ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity."Id.When it comes to the RFC finding, the Seventh Circuit has further "underscored that the ALJ may not generally rely merely on catch-all terms like 'simple, repetitive tasks' because there is no basis to conclude that they account for problems of [CPP]."

[Dkt. #19, at 9, 11].

On the one hand we are told that "there is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for including a moderate limitation on concentration, persistence, and pace." *DeCamp v. Berryhill*, 916 F.3d 671, 675–76 (7th Cir. 2019); *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 698 (7th Cir. 2016). But, in other cases, the court has found that a plaintiff with a moderate restriction on concentration, persistence, and pace can perform simple, repetitive work. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019); *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009) (claimant with deficiencies in concentration, persistence, or pace can perform semiskilled work); *Sims v. Barnhart*, 309 F.3d 424, 431 (7th Cir. 2002) (claimant with moderate limitations in concentration, persistence, or pace can perform "simple and repetitive light work"). Most recently, however, the Seventh Circuit has said:

> A "moderate limitation" is defined by regulation to mean that functioning in that area is "fair." 20 C.F.R. Pt. 404, Subpt. P, App. 1...."fair" in ordinary usage does not mean "bad" or "inadequate." So a "moderate" limitation in performing at a consistent pace seems consistent with the ability to perform simple, repetitive tasks at a consistent pace.

15

*Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021). Plaintiff has at most a moderate impairment in concentration; that's consistent with a capacity to perform "simple, repetitive tasks at a consistent pace."

Moreover, based on this record, there is no reason to believe plaintiff cannot perform work involving simple, routine, repetitive tasks. In session after session, plaintiff's counselor reported no issues with plaintiff's attention or concentration or energy. In her opinion, she specifically reported plaintiff had no limitations in regard to concentrating or attending to tasks. (R. 459). Plaintiff is unable to point to any evidence that his restriction in concentration – if there is any – rule out simple, repetitive, routine tasks. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (ruling any error in RFC harmless in part because plaintiff hypothesized no additional restrictions); *Kuykendoll v. Saul*, 801 F. App'x 433, 438 (7th Cir. 2020)("Notably, Kuykendoll posits no relevant limitations in concentration, persistence, or pace that the ALJ should have included in his RFC assessment.").

### D.

Finally, perhaps in tacit acknowledgment that the record does not support his claim, plaintiff argues that due process was violated because, supposedly, ten years' of treatment records from Ms. Smith were missing. [Dkt. #19, to 13-15]. But this is yet another assertion that has no basis in the record. And, again, the plaintiff's manner of presenting this argument makes it difficult to comprehend.

First, while plaintiff refers to missing records from Ms. Smith, he does not explain what those records might be. Ms. Smith's initial encounter with plaintiff was on February 27, 2017. (R. 406). Her most recent session as of January 9, 2018, was on October 2017. (R. 406). Notes from the few sessions in between, which both the ALJ and now the court have summarized, were included in the

record. (R. 406-445). It was a brief period of treatment, and the notes documenting it, in the main, were unremarkable.

Plaintiff's brief indicates that, at the administrative hearing on January 10, 2019, "plaintiff's attorney advised that medical record requests from Dr. Donna Jones, plaintiff's psychologist, remained outstanding and the ALJ kept the record open for counsel to get them." [Dkt. #19, at 2]. One assumes that plaintiff means Ms. Smith, who is not a doctor but a licensed clinical professional counselor. Indeed, plaintiff's counsel told the ALJ that she had contacted Ms. Smith's office and that they were sending the records to her. Counsel said she should have them by "next week or today", but the ALJ gave her 14 days. (R. 39). No records were forthcoming from counsel and the ALJ issued his decision four months later.

On February 7, 2019, plaintiff counsel wrote to the Appeals Council saying that she still had not received the records for "Dr. Smith." Again, one assumes counsel is referring to Donna Smith, the counselor, but counsel refers to Ms. Smith as "he" and claims "he" had been plaintiff's "treating doctor for ten years." At counsel's request, however, the Appeals Council issued an administrative subpoena for these "ten years'" of records. (R. 272-73). They never came – with good reason. On May 28, 2019, plaintiff's counsel wrote to the Appeals Council requesting review of the ALJ's decision, but also asking additional time to "submit evidence of legal argument." (R. 161). On July 10, 2019, the Appeals Council allowed counsel another 25 days to submit whatever she was planning to submit. (R. 7). As of April 27, 2020, nearly a year had passed and, again, no evidence had come from plaintiff or counsel. Plaintiff's request for review was understandably and properly denied. (R. 1-5). The timeline completely undermines the argument in plaintiff's brief that the Appeals Council failed to "defer its action for 25 days to allow the claimant or appointed representative to

17

submit additional evidence or arguments" [Dkt. #19, at 14].[4]

On the form plaintiff's counsel filed to ask for additional time, it specifically advised as follows:

> If you have additional evidence that relates to a period on or before the date of the hearing decision, you must inform the Appeals Council or submit it. If you have a representative, then your representative must help you obtain the evidence unless the evidence falls under an exception.

(R. 161). It was plaintiff's burden, not the ALJ's, to prove that he was disabled. *See Meredith v. Bowen*, 833 F.2d 650, 655 (7th Cir. 1987); 20 C.F.R. § 404.1512(a)(1). Moreover, because plaintiff has been represented by counsel throughout these proceedings, he is presumed to have made his best case for benefits. *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013)*; Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir.2007)("a claimant represented by counsel is presumed to have made his best case before the ALJ"). While an ALJ "may contact treating physicians for further information when the information already in the record is 'inadequate' to make a determination of disability ...." *Skinner*, 478 F.3d at 843, here, the record was not inadequate; the ALJ simply found it failed to support the plaintiff's claim that she was disabled. *See Simila v. Astrue*, 573 F.3d 503, 516–17 (7th Cir. 2009).

As for the subpoena that apparently went to the wrong address – an address which was, of course, provided by plaintiff and counsel, who had contact with Ms. Smith (R. 38-39) – it's not clear plaintiff ever requested enforcement of the subpoena; but, this would have been a matter in which the ALJ was free to exercise his discretion one way or the other. *Cardona v. Colvin*, 2016 WL 3351574, at *3 (N.D. Ill. 2016); *Bennett v. Colvin*, 2016 WL 308777, at *5 (N.D. Ohio 2016),

---

[4] Plaintiff claims to have submitted brief to the Appeals Council on July 22, 2019 [Dkt. #19-1] but there is not indication it was made part of the record. What was submitted into the record was a request from plaintiff himself for time to submit additional evidence or legal argument by February 2, 2018 – likely February 2, 2019, as the submission was dated July 10, 2019. (R. 10).

judgment entered, 2016 WL 320822 (N.D. Ohio Jan. 26, 2016); *Mack v. Astrue*, 2010 WL 571782, at * 1 (E.D. Penn. 2010); *Serrano v. Barnhart*, 2005 WL 3018256, at *4 (S.D.N.Y. 2005). As already noted, the record here was sufficient for the ALJ's decision. If it was error for the ALJ to not continue on in the quest for these records, it was harmless.

A careful reading of the record demonstrates that plaintiff's counsel, intentionally or not, is trying to send the court on a fool's errand in search of ten years' worth of treatment records from Ms. Smith. None of what counsel thought about the therapist, Ms. Smith, appears to be accurate. She is not a doctor, as already noted. More importantly in this context, Ms. Smith clearly began counseling plaintiff in February 2017. She *clearly* states in her *first* treatment note February 27, 2017, that plaintiff had been referred by NP (which means Nurse Practitioner), Dayna Gaskin, and this was an "initial assessment visit." (R. 406). The records *clearly* indicate that Dayna Gaskin is an NP at Austin Primary care and had begun seeing plaintiff in 2016. (R. 221 (Date of First Contact: February 27, 2016), 312-33, 384-86, 389-98). So, there are no "ten years' worth of missing records." Most of the time, hoof beats are from horses, not zebras.

Tellingly, plaintiff fails to cite any of the treatment notes from Ms. Smith that *are* in the record as support for his claim for disability benefits. The reason for that, as both the court's and the ALJ's review of those treatment notes shows, is obvious: there is nothing to see there. There are, instead, essentially unremarkable physical and psychological examination notes – session after session after session. When a plaintiff fails to direct a court to medical evidence that he is unable to work, subjective complaints alone or unsupported assertions in a brief cannot fill the void. This was perhaps an instance where an appeal of the Commissioner's decision ought not to have been "a conditioned reflex." *Hill v. Norfolk & W. Ry. Co.*, 814 F.2d 1192, 1202 (7th Cir. 1987)(quoting 1

19

Jessup, Elihu Root 133 (1938)). After all, not every Social Security Supplemental Security income denial needs to be brought to federal court.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for summary judgment [Dkt. #22] is granted, and the plaintiff's motion [Dkt. #18] is denied.

**ENTERED:** _____

UNITED STATES MAGISTRATE JUDGE

**DATE:** 8/17/21